UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BRIAN ROBERT BLAZER,

        Plaintiff,

  v.                                                      Case No. 20-cv-0480-bhl

BEST BEE BROTHERS LLC,
RSP INC,

        Defendants.

## DECISION AND ORDER

      Just as there is more than one way to skin a cat, there may be many methods for exterminating a carpenter bee, but according to Plaintiff Brian Robert Blazer (Blazer), he has patented the method at issue in this case. From 2015 to 2017, Blazer worked with Defendant RSP Inc., a company owned by Mike and Paul Ryan, to manufacturer and sell his patented carpenter bee traps. Blazer was unable to come to agreement on continuing his relationship with the Ryans and RSP, however, and was later dismayed to find the Ryans were selling their own bee traps, through RSP and a new business, Best Bee Brothers LLC. Blazer thought the new bee traps looked suspiciously like his own and filed this lawsuit, alleging patent infringement. After discovery, Defendants moved for summary judgment, insisting that the new bee traps do not contain "receptacle adapters," as Blazer's patent requires. Blazer disagrees, retorting that Defendants' models use a version of the "receptacle adapter" included in his patent. Because the record shows that the term "receptacle adapter" in Blazer's patent does not contemplate the Best Bee Brothers' invention, Defendants' motion is granted.

## FACTUAL BACKGROUND[1]

      Blazer is a resident of Heflin, Alabama where he does business as Carpenter Bee Solutions. (ECF No. 25 at 1.) In 2009, he started selling his hand-manufactured carpenter bee traps. (ECF

---

[1] These facts are drawn from the Complaint (ECF No. 1) and the defendants' proposed statement of facts (and the plaintiff's response). (ECF Nos. 22 and 25.) Disputed facts are viewed in the light most favorable to the non-moving party. *See E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

No. 1 at 3.) On February 18, 2015, the U.S. Patent and Trademark Office issued U.S. Patent No. 8,375,624 ('624 Patent) to Blazer and his brother Bradley. (ECF No. 25 at 2.) Blazer is now the sole owner of the patent, having receive an assignment of his brother's interest. (*Id*.) On June 6, 2017, the U.S. Patent and Trademark Office reissued Blazer's patent as U.S. Patent No. RE46,421 ('421 Patent). (*Id*. at 4.)

Because he anticipated the demand for his bee traps would outstrip his supply, Blazer sought a partner to help improve efficiency. (ECF No. 1 at 3-4.) Thus, in October 2015, he signed a Temporary License Agreement with Defendant RSP Inc., which was owned by brothers Mike and Paul Ryan. (ECF No. 25 at 2.) The Agreement permitted RSP to manufacture and sell 50,000 traps for a 15% royalty. (*Id*.) In October 2016, the parties entered into a second Temporary License Agreement to cover the 2017 season. (*Id*. at 3.) This Agreement permitted RSP to manufacture and sell 100,000 bee traps for the same 15% royalty. (*Id*.)

In 2017, Blazer and RSP were unable to come together on another licensing agreement. (*Id*. at 4.) RSP then redesigned the bee traps and began selling new Best Bee Trap and Pinewood Carpenter Bee Box Trap models. (*Id*.) On December 24, 2019, the U.S. Patent and Trademark Office issued U.S. Patent No. 10,512,256 to Mike and Paul Ryan, now doing business as Best Bee Brothers LLC. (*Id*. at 6.)

## SUMMARY JUDGEMENT STANDARD

"Summary Judgment is appropriate where the admissible evidence reveals no genuine issue of any material fact." *Sweatt v. Union Pac. R. Co.*, 796 F.3d 701, 707 (7th Cir. 2015) (citing Fed. R. Civ. P. 56(c)). Material facts are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And an issue of "material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. On the issue of infringement, summary judgment "is proper when no reasonable jury could find that every limitation recited in a properly construed claim . . . is . . . found in the accused device, either literally or under the doctrine of equivalents." *PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005).

## ANALYSIS

Blazer alleges that the Ryans' Best Bee Trap and Pinewood Carpenter Bee Box Trap infringe his '421 Patent. Analyzing Blazer's claim of infringement entails two steps. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). "The first step is determining the meaning and scope of the patent claims asserted to be infringed." *Id*. This is "commonly known as claim construction." *Id*. "The second step [in the infringement analysis] is comparing the properly construed claims to the device accused of infringing." *Id.*

Claim construction is solely a question of law for the Court to decide. *Id*. at 983-84. "[I]n interpreting an asserted claim, the court should look first to the intrinsic evidence of record, *i.e.,* the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). In the second step, the Court must compare the claims to the allegedly infringing device and determine whether "every claim limitation or its equivalent can be found in the accused product." *Abbott Labs. v. Novopharm Ltd.*, 323 F.3d 1324, 1329 (Fed. Cir. 2003). "Literal infringement of a claim exists when each of the claim limitations 'reads on,' or in other words is found in, the accused device." *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1345 (Fed. Cir. 2002). The doctrine of equivalents, on the other hand, focuses on the "role played by each element in the context of the specific patent claim." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997).

"Equivalents are assessed on a limitation-by-limitation basis[.]" *Allen Eng'g*, 299 F.3d at 1345. "[A] patentee may invoke this doctrine of equivalents to proceed against the producer of a device 'if it performs substantially the same function in substantially the same way to obtain the same result.'" *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1258 (Fed. Cir. 1989) (quoting *Sanitary Refrigerator Co. v. Winters*, 280 U.S. 30, 42 (1929)). But "if a court determines that a finding of infringement under the doctrine of equivalents 'would entirely vitiate a particular claim element,' then the court should rule that there is no infringement[.]" *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*, 262 F.3d 1258, 1279–80 (Fed. Cir. 2001) (quoting *Warner-Jenkinson*, 520 U.S. 17, 39 n. 8 (1997)).

Both literal infringement and equivalents are questions of fact. *See D.M.I., Inc. v. Deere & Co.*, 755 F.2d 1570, 1573 (Fed. Cir. 1985); *Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*, 291 F.3d 1317, 1320 (Fed. Cir. 2002). Therefore, summary judgment should only be granted

where no reasonable trier of fact could find either literal infringement or infringement under the doctrine of equivalents. *See Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir. 2002); *Abbott Labs.*, 323 F.3d at 1329.

I.  **Neither Party's Construction of the Claim Term "Receptacle Adapter" Is Appropriate.**

The '421 Patent contains two independent claims: 1 and 13. (ECF No. 1-2 at 7-8.) In summary, those claims require three main elements: "a wood plenum with holes for attracting bees, a clear receptacle for receiving trapped bees, and a 'receptacle adapter' for attaching the receptacle to the bottom of the wood plenum." (ECF No. 18 at 7-8.) The parties agree that the case for summary judgment hinges on the definition of the term "receptacle adapter." (ECF No. 24 at 1.) Therefore, the Court must construe the claim term "receptacle adapter" in the context in which it appears in the claims as well as the context in which it appears as used or illustrated in the remainder of the patent. *Vitronics*, 90 F.3d at 1584. If the Court's construction would not permit a reasonable trier of fact to find infringement, summary judgment must be granted.

In construing a claim term, courts first "look to the words of the claims themselves." *Vitronics*, 90 F.3d at 1582. "[W]ords in a claim are generally given their ordinary and customary meaning." *Id*. And "dictionaries provide evidence of a claim term's 'ordinary meaning.'" *Inverness Medical Switzerland GmbH v. Princeton Biomeditech Corp.*, 309 F.3d 1365, 1369 (Fed. Cir. 2002). However, "a patentee may . . . use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history." *Vitronics*, 90 F.3d at 1582. Therefore, "it is always necessary to review the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning." *Id*. "The specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication." *Id*.

Blazer argues that "the term 'receptacle adapter,' when properly construed in view of the explicit teachings of the specification, includes an opening in the trap entrance unit that receives the receptacle." (ECF No. 24 at 9.) Defendants contend that "receptacle adapter" means "a separate device for connecting a receptacle or container to the bottom of the wood plenum." (ECF No. 18 at 9.)

The language of patent claims 1 and 13, combined with the illustrations and corresponding explanations in the specification, comprise the representative examples from which the Court must

extract the essential features of and classify the term "receptacle adapter." While not quite Hemingway, the patent language is rather simple and direct. There are four elements that a "receptacle adapter" must possess. The first three are: (1) it must be "substantially located at the bottom" of the trap "at the exit opening of the trap entrance unit" (ECF No. 1-2 at 17); (2) it must be "configured to receive a clear or translucent receptacle" (*Id*.); and (3) it must be "adapted so as to allow at least some ambient light to enter the interior of the trap entrance unit via the exit opening, thereby providing a secondary attractant for carpenter bees." (*Id*.). The fourth and final element can exist in one of three forms. The "receptacle adapter" must be: (1) a "coupling" (*Id*. at 15); (2) a "vertical bore . . . sized to allow the insertion of receptacle [] which is retained by friction" (*Id*. at 16); or (3) a "vertical bore [] . . . threaded or fitted with a threaded insert to positively retain [the] receptacle." (*Id*.)

This taxonomy reveals a Goldilocks Problem in the parties' briefings. Defendants' proposed construction of "receptacle adapter" is too narrow, while Plaintiffs' construction is too broad. Defendants want to limit "receptacle adapter" to "a separate device for connecting a receptacle or container to the bottom of the wood plenum." (ECF No. 18 at 9.) This definition excludes three of the six embodiments in the specification because it explicitly exempts the possibility of a "receptacle adapter" with a friction fit, which involves no such "separate device." "Such an interpretation is rarely, if ever, correct," *Vitronics*, 90 F.3d at 1583.

Defendants stake their construction on the dictionary definition of "adapter." (ECF No. 18 at 8-9.) They cite to Merriam-Webster, Cambridge, and the Oxford English dictionaries—all three lords of lexicon in agreement that "adapter" refers to a device used to connect two parts or pieces of equipment. (*Id*.) But just as he fashions his own creation, the inventor may also fashion his own jargon. *Hoechst Celanese Corp. v. BP Chemicals Ltd.*, 78 F.3d 1575, 1578 (Fed. Cir. 1996). Whatever "receptable adapter" means in common parlance, if indeed the term has ever been uttered in that context, Blazer's specification clearly uses it to capture a so-called "friction fit." "Friction fit" is a term of art in engineering, and the patent does not attempt to redefine it. Thus, the Court is bound to interpret it as one experienced in the field would. *Id*. ("A technical term used in a patent document is interpreted as having the meaning that it would be given by persons experienced in the field of the invention, unless it is apparent from the patent and the prosecution history that the inventor used the term with a different meaning.").

Also called an "interference fit" or "press fit," a "friction fit" "is a fastening between two parts which is achieved by friction after the parts are pushed together, rather than by any other means of fastening." *Friction Fit,* DEFINITIONS.NET, https://www.definitions.net/definition/interference+fit (last visited Oct. 4, 2021). In other words, a "friction fit" is "a perfect fit between two parts" (*Friction Fit*, THE FREE DICTIONARY, https://encyclopedia2.thefreedictionary.com/friction+fit (last visited Oct. 4, 2021)) that "relies on friction to hold . . . parts together." Avraham Benatar, *Plastics Joining*, 2 Applied Plastics Engineering Handbook 575, 591 (2017). These fits are often used in place of soldering and create more permanent connections than a blade and socket method. INTERPLEX, https://interplex.com/press-fit-guide/ (last visited Oct. 4, 2021). One common example is seen in plumbing, where PVC pipes are connected to PVC fittings by friction. THE PLUMBING SUPPLY CO., https://theplumbingsupplyco.wordpress.com/2012/06/22/dry-fitting-pvc-connections/ (last visited Oct. 4, 2021). Note that friction fits plainly do not require a separate device to connect two pieces of equipment. *See* Alan O. Lebeck, Principles and Design of Mechanical Face Seals 232 (1991).

Defendants' proposed construction does not account for the "friction fit" version of "receptacle adapter." Given that the specification "is the single best guide to the meaning of a disputed term," *Vitronics*, 90 F.3d at 1582, and the specification makes three references to a "receptacle adapter" being a "friction fit," the Court cannot agree with Defendants' construction of the term.

But claim construction is not a simple disjunctive syllogism. The Court need not accept Plaintiff's construction just because Defendants' version is too narrow. Indeed, as previously noted, Plaintiff's proposed construction suffers from the opposite problem. Plaintiff asks the Court to read "receptacle adapter" to include "an opening in the trap entrance unit that receives the receptacle." (ECF No. 24 at 9.) This definition finds no support in the patent. While it is true that the "friction fit" "receptacle adapter" is an opening in the trap entrance that receives the receptacle, it would be an inductive fallacy of overgeneralization to assume this implies patent coverage of all carpenter bee traps with openings in the trap entrance that receive a receptacle. Indeed, patents mean what they say. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) ("the patentee is required to 'define precisely what his invention is'") (quoting *Merill v. Yeomans*, 94 U.S. 568, 670 (1876)). This one does not say what Plaintiff claims.

To illustrate the point, consider a child who has requested a pet dog for Christmas. It would be strange for that child to wake up on December 25 and gleefully accept a polecat instead on the theory that the request for a dog was actually a request for any warm-blooded, furry, quadruped. We would think the child mistaken. Plaintiff is similarly mistaken here. He cannot extrapolate from a single example to radically expand the breadth of his claim term when he has already cabined that claim term with specific language in his patent. *Phillips*, 415 F.3d at 1316 (noting "the inventor's lexicography governs").

Having reviewed the patent materials and the parties' briefings, the Court construes the claim term "receptacle adapter" to require four elements. First, it must be substantially located at the bottom of the carpenter bee trap, at the exit opening of the trap entrance unit. Second, it must be configured to receive a clear or translucent receptacle. Third, it must be adapted so as to allow at least some ambient light to enter the interior of the trap entrance unit via the exit opening, thereby providing a secondary attractant for carpenter bees. And fourth, it must be: (1) a coupling; (2) a vertical bore sized to allow the insertion of a receptacle which is retained by friction; or (3) a vertical bore threaded or fitted with a threaded insert to positively retain the receptacle.

**II.     As Properly Construed, Defendants' Traps Contain No "Receptacle Adapters."**

Now that the Court has dissected the term "receptacle adapter" into its component parts, we must evaluate Defendants' carpenter bee traps to determine if any reasonable trier of fact could infer that those traps contain a "receptacle adapter." At this stage, "[Plaintiff] must prove that each claim element is present in the accused product, either literally or by equivalence." *General Elec. Co. v. SonoSite, Inc.*, 641 F. Supp. 2d 793, 807 (W.D. Wis. 2009) (citing *Dawn Equip. Co. v. Kentucky Farms Inc.*, 140 F.3d 1009, 1015 (Fed. Cir. 1998)). "Conversely, [Defendant] can prevail by demonstrating that at least one element of the asserted claim is absent from their devices." *Id*. at 808.

Both the Best Bee Trap and the Pinewood Carpenter Bee Trap operate in similar ways. The Best Bee Trap has a straight-cut rectangular opening in the bottom of the trap housing. (ECF No. 26 at 2.) The receptacle has four stops that allow it to move freely up and down within the trap housing without dropping out. (*Id*.) The Pinewood Carpenter Bee Trap has a straight-cut circular opening in the bottom of the trap housing. (*Id*. at 4.) That opening is covered by a cap or plug, which has two stops that allow it to move freely up and down with the trap housing without dropping out. (*Id*.)

The question now before the Court is whether any reasonable trier of fact could conclude that these stops are literally "receptacle adapters" as contemplated by Plaintiff's patent. The answer is no. The stops are not "couplings," as used in the patent because they are not separate devices. So, to satisfy the fourth element of a "receptacle adapter," they must be either a vertical bore sized to allow retention of a receptacle by friction, or a vertical bore threaded or fitted with a threaded insert to positively retain the receptacle. The stops are not retained by friction, nor do they allow for a relatively permanent connection between the receptacle and the plenum. And there is no threaded bore or threaded insert. Therefore, there is no literal infringement.

Plaintiff also invokes the doctrine of equivalents and contends Defendants' receptacle stops are equivalent to "receptacle adapters" under the '421 Patent. According to the Federal Circuit: "A component in an accused product or process may be equivalent to a claim element if the two are insubstantially different with respect to the 'role played by the element in the context of the specific patent claim.'" *Eli Lilly & Co. v. Hospira, Inc.*, 933 F.3d 1320, 1335 (Fed. Cir. 2019) (quoting *Warner-Jenkinson*, 520 U.S. 17, 40 (1997)). "Relevant differences can include the function each serves, the way in which each works, and the result each obtains[.]" *Id*.

The doctrine of equivalents does not help Plaintiff here. First, while the function of Defendants' stops is, in part, to hold the receptacle in place, it is also to allow the receptacle to move freely within the trap. (ECF No. 26 at 3-4.) This permits the receptacle to be stored within the trap when not in use. (*Id*.) Plaintiff's "receptacle adapter" has no such secondary function. Second, Defendants' stops work by hooking onto the trap opening. (*Id*.) They require neither a coupling, nor a friction fit of any kind. But one or the other is necessary for Plaintiff's "receptacle adapters." This means, a finding of equivalents would entirely vitiate a required element of Claims 1 and 13 in Plaintiff's patent. When such a result would obtain, a finding of infringement is impermissible. *Bell Atlantic*, 262 F.3d at 1280-81. Indeed, the doctrine of equivalents "is not designed to permit wholesale redrafting of a claim to cover non-equivalent devices." *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 935 (Fed. Cir. 1987). If Plaintiff wanted his claim to encompass Defendants' stops, he needed to articulate that in his patent, not after-the-fact in court. Under his patent as filed, Plaintiff cannot successfully invoke the doctrine of equivalents.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment of non-

infringement under Fed. R. Civ. P. 56 (ECF No. 17) is GRANTED, and the case is DISMISSED. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on October 5, 2021.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge